IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

MARLON SONTAY, #494638,     )
                                       )
     Petitioner,           )
                                       )
v.                          )     NO. 3:22-cv-552
                                       )
SHARON ROSE,             )     JUDGE RICHARDSON
                                       )
     Respondent.        )

## MEMORANDUM OPINION AND ORDER

Petitioner Marlon Sontay filed a *pro se* petition for writ of habeas corpus ("Petition") under

28 U.S.C. § 2254, challenging his 2011 convictions for four counts of rape of a child, two counts

of aggravated sexual battery, and one count of rape in Davidson County, Tennessee. (Doc. No. 1).

Petitioner has also filed a memorandum in support of his Petition. (Doc. No. 2). Respondent has

filed an Answer (Doc. No. 12), and Petitioner has filed a Reply (Doc. No. 15).

As explained below, Petitioner is not entitled to habeas corpus relief, so the Petition will be

denied, and this action will be dismissed. However, the Court will issue a certificate of

appealability as to one aspect of Petitioner's sufficiency-of-the-evidence claim and to his claim

that trial counsel was ineffective for failing to request jury instructions for lesser-included offenses.

### I.      Procedural and Factual Background

### A.  Pretrial, Trial, and Sentencing Proceedings

The Tennessee Court of Criminal Appeals summarized Petitioner's pretrial, trial, and

sentencing proceedings as follows:

> [Petitioner] was arrested after his niece, O.S., informed her parents that her uncle
> had been sexually abusive towards her. The abuse occurred while the victim was

twelve and thirteen years of age. After an investigation, Detective Jill Weaver of the Metropolitan Nashville Police Department obtained an arrest warrant for Appellant. Appellant was arrested and transported to a local hospital for mandatory HIV testing as a result of the pending charges for rape of a child.

When Appellant was taken to the Criminal Justice Center, he was interviewed by Detective Weaver and a Spanish-speaking officer. After he was read his *Miranda* rights, Appellant admitted to the sexual abuse.

Appellant was indicted by the Davidson County Grand Jury in January of 2010 for four counts of rape of a child, two counts of aggravated sexual battery and one count of rape. Prior to trial, Appellant sought to suppress his statements to police. At the hearing on the motion to suppress, Detective Weaver testified that Appellant's confession was voluntary. Appellant testified that he admitted he sexually abused the victim. Further, he admitted that his admission did not come as a result of questioning by the detective. Appellant testified that his statements admitting the sexual abuse before and during the formal interview were consistent with each other. The trial court denied the motion to suppress.

At trial, the victim, then fourteen years of age and in the eighth grade, took the stand. She explained that during the summer between fifth and sixth grade, when she was twelve, she lived with her parents, siblings, aunt, uncle, and Appellant at her home in Nashville.

The victim explained that the first incidence of abuse took place when her mother was in Houston. Appellant had been drinking and came into the victim's bedroom, touched her breasts and leg, and tried to lay down with her on her bed. The victim told Appellant to leave. He complied.

A few days later, Appellant, the victim, and the victim's younger sister were at home alone. Appellant took the victim to her bedroom where he undressed her, got on top of her, and put his penis inside her vagina. The victim asked him why he was having sex with her, and he responded that "he couldn't do it with anybody else."

The next incident occurred one day early in the school year when the victim was home sick from school. Appellant again took her to her bedroom and put his penis inside her vagina. She asked him to stop. He refused.

On yet another occasion, the victim was asleep in her room. She awoke to find Appellant in her room. He tried to put his penis in her "behind." He managed to get his penis in "a little bit."

Shortly before the victim's thirteenth birthday, Appellant woke the victim up in the middle of the night. He kissed her vagina and spit on it to make his penis go in easier.

There was one occasion during which Appellant asked the victim to come to his room to play video games on his computer. Once the victim was in his room, Appellant put his penis inside her vagina.

The abuse stopped after the victim's parents came home one day to find Appellant in the victim's bathroom. His clothing was on the floor of the victim's bedroom. The victim's father, E.S.[,] threw Appellant out of the house and contacted police.

E.S. testified at trial that he was the father of the victim. Appellant is his younger brother and came from Guatemala to live with them when the victim was a young child. Appellant and his family had a great relationship and Appellant was looked at as part of the family. E.S. recalled the day that he caught Appellant in the victim's bathroom wearing only underwear. He immediately confronted Appellant and gave him one hour to pack his belongings and leave the house.

The victim would only speak with her mother, A.T., about the abuse. The two rode around in the car while the victim recounted the abuse that had started while A.T. was in Houston and continued for at least three months.

Sometime in the next few days, Appellant sent a text message to E.S. apologizing. The message also stated that no one should say anything to prevent the victim from looking bad.

The victim was taken to Our Kids for a medical examination in conjunction with the investigation. At trial, Nurse Practitioner Hollye Gallion testified. She was qualified as an expert in forensic medical examinations of children. She treated the victim on December 11, 2009, about one week after the last incident of abuse. The victim reported that Appellant would "put his body on [her] and he would put his slushy stuff on the paper and throw it away and then come back and do it to [her] again." The victim reported to Ms. Gallion that Appellant touched her breasts, vagina, and anal area. The physical examination showed no evidence of sexual abuse. Ms. Gallion did not expect the examination to show any evidence of sexual abuse due to the timing of the examination.

During the investigation, Detective Jill Weaver set up a controlled telephone call from A.T, the victim's mother, to Appellant. During the telephone call, Appellant admitted that he sexually had abused the victim.

Following his arrest, Appellant was interviewed. Appellant waived his *Miranda* rights and admitted that he had sexually abused the victim. Appellant corroborated much of the victim's allegations. He "described having sexual intercourse with her ... three to four times." Appellant also "admitted to having anal sex with [the victim] from behind." Appellant also admitted that he did not want to get the victim pregnant so he would "pull out and ejaculate on an article of clothing or some tissue." Appellant described with specificity when the abuse occurred, "normally happening when her parents were gone and, specifically, that first time when her mom was in Texas." Appellant also stated that he was "fully aware of how old [the

victim] was" and "basically described it as she was flirting with him, and that she was acting like she was into wanting to have sex with him." Appellant also admitted that he had just finished having sex with the victim when he was caught by her parents and was in the bathroom to "finish wiping off."

Appellant's sister, Maria Sontay, testified that she caught Appellant and the victim's mother, A.T., in a hotel room about to kiss. She claimed to have no knowledge of the abuse and referred to it as a "family problem."

Appellant testified that he was "madly in love" with the victim's mother, A.T., and claimed that the two had an affair. According to Appellant, A.T. asked him to move out but Appellant refused. A.T. only successfully got Appellant to move out by falsely accusing him of sexually abusing the victim. Appellant stated that he lied to Detective Weaver because she coerced him into confessing. Further, Appellant claimed that he lied during the controlled telephone call because he loved A.T. and was trying to hide their relationship.

At the conclusion of the proof, the jury convicted Appellant of four counts of rape of a child, two counts of aggravated sexual battery, and one count of rape. The trial court held a separate sentencing hearing. At the hearing, Appellant was sentenced to twenty-five years for each conviction for rape of a child, and eight years for each remaining conviction. The trial court ordered two of the convictions for rape of a child to run consecutively to each other but concurrently to the remaining convictions, for a total effective sentence of fifty years at 100%.

(Doc. No. 8-13 at 2−5); *State v. Sontay*, No. M2012-01579-CCA-R3-CD, 2013 WL 3964119 (Tenn. Crim. App. July 31, 2013) (footnote omitted).

### B. Direct Appeal

Petitioner appealed, raising the following grounds for reversal:

- the trial court erred in imposing an effective sentence of 50 years;

- the trial court erred in denying Petitioner's motion to suppress;

- admission of hearsay statements made by the victim during a forensic interview violated Petitioner's confrontation right;

- Petitioner was convicted based on insufficient evidence; and

- Tennessee's sentencing statutes for sexual offenses violate the Tennessee Constitution.

(Doc. No. 8-11 at 17−37).

The Tennessee Court of Criminal Appeals affirmed, (Doc. No. 8-13), and the Tennessee Supreme Court denied permission to appeal, (Doc. No. 8-16).

## C. State Postconviction Review

The Tennessee Court of Criminal Appeals summarized Petitioner's postconviction proceedings in the trial court as follows:

> The Petitioner filed a pro se petition for post-conviction relief. Counsel was appointed and filed an amended petition, alleging that the Petitioner received the ineffective assistance of trial counsel by counsel's failure to file a motion to sever the seven counts in the Petitioner's indictment, by counsel's failure to file for a bill of particulars related to the seven counts, and by counsel's failure to request specific jury instructions regarding attempted rape.
>
> At the post-conviction hearing, trial counsel testified that he discussed with the Petitioner whether he should file a motion to sever the offenses. Counsel said he told the Petitioner he did not think filing the motion was a good idea because the trial court would likely deny the severance. Counsel said he told the Petitioner that if the court granted the motion to sever, the Petitioner was more likely to get consecutive sentences than if the Petitioner proceeded with one trial for all seven offenses. Counsel said he considered whether evidence of one offense could be used as propensity evidence regarding the other offenses but decided that "more harm than good would come" from having the offenses severed and that he did not see a "strategic benefit" to severance. Counsel said that he considered whether the offenses appeared to be part of a common scheme or plan. Counsel explained that the offenses included the same victim, the same house, the same room, and "the same issues" for each offense.
>
> Trial counsel testified that he did not request a bill of particulars from the prosecutor. He explained that the indictment included a general time frame for the offenses and that the prosecutor told him the dates and times that would be included if he filed for a bill of particulars. Counsel said that he discussed with the Petitioner the "pros and cons" of requesting a bill of particulars. When asked if he considered that requesting a bill of particulars was an investigative technique to gather more information, counsel said that had he requested a bill of particulars the Petitioner might have been able to call a "witness or two." Counsel said that he did not think his failure to request a bill of particulars was detrimental to the defense because the Petitioner's defense was that the offenses never occurred. Counsel explained that regardless of when the offenses occurred, the Petitioner was not present. Counsel explained that the Petitioner said he was in Atlanta during one of the offenses. Counsel also said that the defense theory was "evolving from time to time" and that he saw no tactical advantage to requesting a bill of particulars.

Trial counsel acknowledged that he did not request lesser included offense instructions for the rape offense based on anal penetration and for the rape offense based on the Petitioner's kissing the victim's vagina on the basis that the victim's trial testimony indicated there may have been no penetration during these two offenses. Counsel said that reflecting back on the trial "possibly" a basis existed to ask the trial court for a jury instruction for attempted rape.

On cross-examination, trial counsel testified that the Petitioner's statement to the police was a "major hurdle" for the defense. Counsel said that during the Petitioner's recorded statement, the Petitioner admitted to "anally raping" and "fondling" the victim. Counsel said that he received discovery from the State and that he met with the Petitioner multiple times. Counsel said that all of his decisions throughout the trial were tactical.

The Petitioner testified that trial counsel met with him once at court and once at the jail. He said counsel sent an associate attorney to visit the Petitioner a second time in jail. The Petitioner said that the time counsel visited him in jail, counsel "threaten[ed]" the Petitioner and told the Petitioner he would "die in jail" if he did not accept the State's plea offer. The Petitioner said counsel also told him that he "couldn't do anything in [the Petitioner's] case" based on counsel's previous experience as an assistant district attorney and that the State would "give him more than one hundred years." The Petitioner said that counsel never wanted to help him and that "they" could not agree on whether to accept the State's offer.

The Petitioner testified that trial counsel did "not completely" discuss the indictment and the charges with him. The Petitioner said that counsel did not review discovery with him and that he never discussed any of the specific dates and places where the offenses occurred. The Petitioner said that he gave counsel a list of witnesses to contact but that counsel never communicated with them. The Petitioner said that counsel never discussed severance, a bill of particulars, or jury instructions.

On cross-examination, the Petitioner said that trial counsel told him the case would be difficult because the Petitioner confessed to the police. The Petitioner also agreed that his case was difficult because during a telephone call to the victim's mother, the Petitioner confessed to her. The Petitioner said he reviewed the discovery provided by counsel.

In a written order denying relief, the post-conviction court found that trial counsel's performance was not deficient for his failing to file a motion to sever and that the Petitioner was not prejudiced. The court reasoned that the offenses could reasonably be deemed part of a larger, continuing plan or scheme, or conspiracy because each offense was committed against the same victim; the offenses occurred in the same location while the victim's parents were away; and all of the offenses were committed for the Petitioner's sexual gratification. The court also found that counsel's belief that the severance would not have been granted was reasonable and that his decision not to request a severance was a tactical decision.

The post-conviction court found that trial counsel's decision not to file a bill of particulars was neither deficient nor prejudicial. The court credited counsel's testimony that he received information from the prosecutor regarding the specific sex acts and the dates on which they occurred.

The post-conviction court found that trial counsel's failure to request jury instructions on the lesser included offense of attempted rape of a child did not prejudice the Petitioner. The court found that the victim's trial testimony that the Petitioner's penis penetrated her anal opening "a little bit" and that the Petitioner "kissed [her] vagina" were sufficient to establish the element of penetration regarding his convictions for rape of a child by means of anal penetration and rape of a child by means of vaginal penetration. The court also considered the Petitioner's two statements admitting he had sexually penetrated the victim in each incident of rape of a child. The court reasoned that the Petitioner's trial strategy was to maintain that no sexual contact with the victim occurred, which was not consistent with a conviction for a lesser included offense. The court reasoned that the jury heard the Petitioner's two incriminating statements along with the victim's trial testimony and determined that the Petitioner was not entitled to relief on this issue.

Because the post-conviction court found that counsel's performance did not fall below an objective standard of reasonableness or that the Petitioner was not prejudiced by any alleged deficiency, the court denied relief.

(Doc. No. 8-23 at 2−5) (footnote omitted).

On appeal from the denial of postconviction relief, Petitioner argued that trial counsel was ineffective for failing to:

- file a pretrial motion to sever offenses;

- file for a bill of particulars; and

- request a jury instruction for the lesser-included offense of attempted rape of a child.

(Doc. No. 8-21 at 8−12). The Tennessee Court of Criminal Appeals affirmed (Doc. No. 8-23), and Petitioner did not file an application for permission to appeal in the Tennessee Supreme Court.

## D.  Federal Habeas Corpus Petition

Petitioner next filed his Petition in this Court, raising the following grounds for relief:

1)  Petitioner's convictions were based on insufficient evidence;

2) the trial court violated Petitioner's right against self-incrimination by admitting evidence of Petitioner's confession;

3) trial counsel was ineffective for failing to file a pretrial motion to sever offenses;

4) trial counsel was ineffective for failing to file for a bill of particulars;

5) trial counsel was ineffective for failing to request a jury instruction for the lesser-included offense of attempted rape of a child;

6) trial counsel was ineffective for failing to object based on hearsay to admission of statements made by O.S. during a medical interview and a forensic interview; and

7) trial counsel was ineffective for failing to move to suppress statements made by Petitioner during the recorded phone call between Petitioner and O.S.'s mother.

(Doc. No. 1 at 5–17). The Petition is fully briefed and ripe for review. (Doc. No. 12); (Doc. No. 15).

## II.    Governing Standards

A federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The AEDPA creates both procedural and substantive limits on the Court's authority to grant habeas corpus relief for a petitioner in custody pursuant to a state court judgment. *Howell v. Perry*, No. 3:20-CV-00825, 2025 WL 992691, at *3 (M.D. Tenn. Apr. 2, 2025) (Richardson, J.). The Court sets forth the standards applicable to this Petition below.

### A.  Procedural Default

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b), thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court . . ., thereby alerting that court to the

federal nature of the claim." *Id.* (citation omitted). In Tennessee, a petitioner is "'deemed to have exhausted all available state remedies for [a] claim'" when the claim is presented to the Tennessee Court of Criminal Appeals. *Adams v. Holland*, 330 F.3d 398, 401 (6th Cir. 2003) (quoting Tenn. Sup. Ct. R. 39).

A procedural default can occur in one of two ways. First, a procedural default may occur if the state court actually "relied on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U. S. 320, 327 (1985). Second, if a petitioner fails to properly exhaust a claim in state court, and the claim can no longer be raised in state proceedings because of a failure to follow state procedure for presenting such a claim, the claim is "technically exhausted" but procedurally defaulted. *Woodford v. Ngo*, 548 U. S. 81, 126 (2006).

A petitioner may obtain merits review of a procedurally defaulted claim by demonstrating "cause and prejudice" for the default. *Sutton v. Carpenter*, 745 F.3d 787, 791 (6th Cir. 2014). To establish cause, the petitioner must show that "some objective factor external to his defense impeded his ability to comply with the state's procedural rule." *Bies v. Sheldon*, 775 F.3d 386, 396 (2014). In Tennessee and many other states, a petitioner who raises a procedurally defaulted claim alleging ineffective assistance of trial counsel may demonstrate cause by showing that postconviction counsel was ineffective for failing to raise the claim in initial state postconviction proceedings. *See Martinez v. Ryan*, 566 U.S. 1, 17 (2012) ("Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."); *Trevino v. Thaler*, 569 U.S. 413, 429 (2013) (extending *Martinez* to states with procedural frameworks that make unlikely a meaningful opportunity to

raise ineffective assistance claim on direct appeal); *Sutton*, 745 F.3d at 795−96 (holding that *Martinez* and *Trevino* apply in Tennessee).

To demonstrate cause under this framework, a petitioner must show that "the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 566 U.S. at 14. To establish prejudice under the "cause and prejudice" analysis, a petitioner must demonstrate that the constitutional error "'worked to his actual and substantial disadvantage.'" *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis omitted)).

### B. Merits Review

Under the AEDPA, a federal court may grant a writ of habeas corpus on a claim that was adjudicated on the merits in state court only if that adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

If a claim was not adjudicated on the merits in state court, this Court applies the "pre-AEDPA standard of review: *de novo* for questions of law (including mixed questions of law and fact), and clear error for questions of fact." *Robinson v. Howes*, 663 F.3d 819, 823 (6th Cir. 2011); *see* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination

of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").[1]

## III.   Analysis

Respondent argues that Grounds 6 and 7 are procedurally defaulted and that the remainder of Petitioner's claims are without merit. Petitioner counters that Grounds 6 and 7 may be reviewed under *Martinez* and that he is entitled to habeas relief on all claims. The Court will address each of Petitioner's claims separately, in the order presented.

### A.  Ground 1: Sufficiency of the Evidence

Supreme Court precedent clearly establishes that a defendant may not be convicted of a crime "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [they are] charged." *In re Winship*, 397 U.S. 358, 364 (1970). When a defendant challenges the sufficiency of the evidence underlying his conviction, the reviewing court must apply substantial deference to the jury verdict: "[T]his inquiry does not require a court to ask whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphases retained) (quotation

---

[1] These pre-AEDPA standards govern even when the state court had no opportunity to adjudicate a claim because the petitioner never presented it in state court. *See Jones v. Bagley*, 696 F.3d 475, 484, 486−87 (6th Cir. 2012) (reviewing procedurally defaulted claim on the merits and applying pre-AEDPA standards). Often such claims are procedurally defaulted, but on habeas review federal courts may bypass the default to deny a defaulted claim on the merits. *See Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003). Also, when there is federal merits review of a claim that no state court has adjudicated, often there will not be any state-court legal or factual determinations pertinent to the federal habeas claims. But sometimes there will be. *See, e.g.*, *Moroales v. Johnson*, 659 F.3d 588, 602 (7th Cir. 2011) (deferring to state-court factual finding in assessing petitioner's ineffective-assistance-of-trial-counsel claim that no state court had adjudicated).

marks and citation omitted). On federal habeas review, a second layer of deference is added to this already deferential standard:

> [A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable. Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.

*Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam) (quotation marks and citation omitted).

Here, Petitioner contends that each of his convictions was based on insufficient evidence. But the Tennessee Court of Criminal Appeals reasonably held to the contrary, and 28 U.S.C. § 2254 therefore bars relief.

### 1. Rape of a Child—Age

Petitioner was convicted of four counts of rape of a child—Counts 1, 2, 3, and 4. (Doc. No. 8-1 at 56−59). "Rape of a child is the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is more than three (3) years of age but less than thirteen (13) years of age." Petitioner contends that he was convicted on all four counts of rape of a child despite insufficient evidence of O.S.'s age at the time of each encounter. (Doc. No. 2 at 1−36). The Tennessee Court of Criminal Appeals rejected this argument as to all four of Petitioner's convictions for rape of a child. (Doc. No. 8-13 at 11−12). In doing so, the Tennessee Court of Criminal Appeals relied on reasonable determinations of fact and reasonably applied *Jackson*.

O.S. was born November 5, 1996, which means she turned 13 years old on November 5, 2009. (Doc. No. 8-4 at 13). Petitioner began committing sex acts against O.S. in September 2009, when O.S.'s mother was in Houston to see her sick mother. (Doc. Nos. 8-4 at 22−28; 8-6 at 10).

All the acts underlying Petitioner's convictions took place before November 28, 2009, when O.S.'s parents caught him and kicked him out of their home. (Doc. No. 8-5 at 32; Doc. No. 8-13 at 3).

Count 1 was based on "testimony that the defendant penetrated the victim's genitals with his penis the first time she stayed home from school in the sixth grade." (Doc. No. 8-1 at 39). O.S. testified that this happened "at the beginning of [her] school year," which began in August 2009. (Doc. No. 8-4 at 19, 42−43). Based on this evidence, a jury could reasonably infer that the events underlying Count 1 took place before O.S.'s birthday on November 5, 2009. *See Jackson*, 443 U.S. at 319 ("[It is] the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."). And regardless of the *personal view of the undersigned* about whether the jury's inference itself was reasonable, it was reasonable for *the Tennessee Court of Criminal Appeals* to conclude that the jury's inference was reasonable, so 28 U.S.C. § 2254(d)(2) bars habeas relief.[2] *Cavazos*, 565 U.S. at 2.

Count 2 was based on Petitioner's anal penetration of O.S. after waking her in her bedroom. (Doc. No. 8-1 at 39). O.S.'s testimony about this count, as relevant here, was as follows:

> Q:    Okay. After [Petitioner] started touching you and having sex with you, how often would he do it?
>
> A:    Well, depending on whether there were people in the house, not if he thought there were people there. If there was not people there, he would take advantage.

---

[2] Petitioner contends that the Tennessee Court of Criminal Appeals unreasonably relied on the timing of Petitioner's first sexual battery of the victim (when the victim's mother was in Houston), which did not underly the charge in Count 1. (Doc. No. 2 at 61−62). But it was reasonable for the Tennessee Court of Criminal Appeals to rely on Petitioner's first sexual battery of O.S. to create a contextual timeline for the events underlying Count 1, which took place at the beginning of the school year. (*See* Doc. No. 8-13 at 11) ("The victim testified her birthday was on November 5, 1996, the first incident happened while her mother was in Houston in the summer of 2009, and school started in the fall of 2009.").

Q:     Okay. And how many times did that happen from the first time to November when you turned 13?

A:     Well, he continued to do it—well, that happened a lot of times.

Q:     Did he ever touch your body with his private anywhere other than your vagina area?

A:     Behind.

Q:     Can you tell us what you remember about that?

A:     Well, that time I was sleeping—well, then he came and woke me up. since I was laying down, face down, that is when he came and said he was going to get on top of me and he touched me behind.

Q:     What did he touch you behind with?

A:     His penis.

                                    * * *

Q:     Did his penis go in your bottom or your behind?

                                    * * *

Q:     Did it go in a little bit?

A:     Yes.

(Doc. No. 8-4 at 43−45).

While O.S. did not identify a specific or reference date for when Petitioner penetrated her anus, the jury could reasonably infer from the context of her testimony that it was among the "a lot of times" Petitioner raped her "from the first time to November when [she] turned 13." (*Id.* at 290). And even if it were true (in the view of the undersigned) that the jury's inference itself was not reasonable, it was reasonable for the Tennessee Court of Criminal Appeals to conclude that the jury's inference was reasonable, so 28 U.S.C. § 2254(d)(2) bars habeas relief. *Cavazos*, 565 U.S. at 2.

Counts 3 and 4 are more straightforward. Count 3 was based on "testimony that [Petitioner] performed cunnilingus on the victim when he pulled down her pants and 'kissed' her vagina in her bedroom." (Doc. No. 8-1 at 39). O.S. testified that this happened before her birthday. (Doc. No. 8-4 at 46). Count 4 was based on "testimony that [Petitioner] penetrated the victim's genitals with his penis in his bedroom after he called her up to play video games on his computer." (Doc. No. 8-1 at 39). O.S. testified that this also happened before her birthday. (Doc. No. 8-4 at 49). From this testimony, a jury could reasonably infer that the events underlying Counts 3 and 4 happened before O.S. turned 13 in November 2009.[3] The Tennessee Court of Criminal Appeals therefore reasonably rejected this sufficiency challenge.

### 2. Rape of a Child—Anal Penetration

Petitioner argues that he was convicted on Count 2 despite insufficient evidence that he sexually penetrated O.S.'s anus. Under Tennessee law, "'Sexual penetration' means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's . . . body, but emission of semen is not required." Tenn. Code Ann. § 39-13-501(7).

O.S. testified about this offense as follows:

Q:     Did his penis go in your bottom or your behind?

A:     No, not all of it. He just tried to put it in and he didn't put it in.

Q:     Did it go partway in but not all of the way?

A:     Well, more or less. when he tried to put it in, he couldn't get it in.

---

[3] Petitioner contends that "it cannot reasonably be said with any degree of certainty whether the victim understood the question to mean [her] thirteenth birthday or in reference to her most recent birthday, which would have been her fifteenth." (Doc. No. 15 at 10). But a jury could have reasonably rejected Petitioner's strained interpretation of O.S.'s testimony and concluded instead that O.S. was consistently referring to her birthday in "November when [she] turned 13." (Doc. No. 8-4 at 44).

Q:    Did it go in a little bit?

A:    Yes.

(Doc. No. 8-4 at 43−45).

Petitioner argues that this testimony does not demonstrate that he penetrated O.S.'s "anal opening," because "bottom" and "behind" could refer to O.S.'s buttocks, not her anus. (Doc. Nos. 2 at 23−26; 15 at 11−12). But Petitioner ignores Detective Weaver's testimony about Petitioner's own admission "to having anal sex with [O.S.] from behind." (Doc. No. 8-5 at 35−36). This testimony, when considered with O.S.'s, provided ample evidence for the jury to reasonably find that Petitioner engaged in "anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim[]…." Tenn. Code Ann. § 39-13-501(7). The Tennessee Court of Criminal Appeals therefore reasonably rejected this sufficiency challenge.

### 3.   Rape of a Child—Cunnilingus

As to Count 3, Petitioner argues that "the State failed to prove the charge of rape of a child by 'cunnilingus' in that, no 'penetration' of the victim's vagina ever occurred which is absolutely required for cunnilingus to occur." (Doc. No. 2 at 30). However, as a matter of Tennessee law, Petitioner is incorrect that cunnilingus requires penetration. *State v. Bardin*, No. W2017-02506-CCA-R3-CD, 2019 WL 458917, at *4 (Tenn. Crim. App. Feb. 5, 2019) ("[P]enetration is not required for cunnilingus to constitute rape. Because the statutory definition of 'sexual penetration' includes cunnilingus, a defendant can be guilty of rape whether or not the defendant [actually] penetrates the victim's vagina during cunnilingus."); *see Garcia Sanchez v. Phillips*, No. 20-5205, 2020 WL 4875325, at *3 (6th Cir. July 14, 2020) (denying certificate of appealability based on petitioner's argument that the victim's testimony he "put his tongue on her vagina" was insufficient

to prove rape of a child under Tennessee law). Accordingly, the Tennessee Court of Criminal Appeals reasonably rejected this sufficiency challenge.

4. Aggravated Sexual Battery[4]

Petitioner was convicted of two counts of aggravated sexual battery based on Petitioner touching O.S.'s breasts with his hands on two separate occasions a few days apart. (Doc. No. 8-1 at 39). Count 5 was based on the first occasion, and Count 6 was based on the second occasion.

"Aggravated sexual battery is unlawful sexual contact with a victim by the defendant or the defendant by a victim . . . [when] [t]he victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-504(a)(4). "'Sexual contact' includes the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." Tenn. Code Ann. § 39-13-501(6). "'Intimate parts' includes semen, vaginal fluid, the primary genital area, groin, inner thigh, buttock or breast of a human being." Tenn. Code Ann. § 39-13-501(2).

Petitioner contends that he was convicted on Count 5 even though (according to him) there was insufficient evidence that he touched O.S.'s breasts for the purpose of sexual arousal or gratification. (Doc. No. 2 at 37−40). As to this charge, O.S. testified that Petitioner had been

---

[4] Petitioner has served the concurrent eight-year prison terms for his aggravated sexual battery and rape convictions. (*See* Doc. No. 8-1 at 60−62). However, his sentences for these offenses include lifetime community supervision. (*Id.*); *see* Tenn. Code Ann. § 39-13-524(d)(1) ("A person on community supervision shall be under the jurisdiction, supervision and control of the department of correction in the same manner as a person under parole supervision."). Petitioner therefore remains "in custody" pursuant to these convictions as required for habeas relief under 28 U.S.C. § 2254(a). *In re Stansell*, 828 F.3d 412, 416 ("Individuals subject to post-release control, like individuals subject to supervised release in the federal system, satisfy the 'in custody' requirement.").

drinking when he entered her room, lay on the bed beside her, and touched her breasts and legs. (Doc. No. 8-4 at 25−28) (explaining that Petitioner touched her "[o]n the skin," not "over [her] clothes"). No one else was home at the time. (*Id.* at 24). A jury could reasonably infer from this testimony—especially when considered together with evidence of Petitioner's multiple rapes of O.S. in the following months—that Petitioner's conduct underlying Count 5 was for the purpose of Petitioner's sexual arousal or gratification.

As to Count 6, Petitioner contends that inconsistencies in O.S.'s testimony render the evidence insufficient as to his guilt. (Doc. No. 2 at 39−42). But "inconsistent testimony is a matter of credibility, not sufficiency." *James v. Corrigan*, 85 F.4th 392, 397 (6th Cir. 2023) ("The jury was within its proper bounds to credit the incriminating testimony, even if the testimony sometimes conflicted. Indeed, we must presume that's what the jury did."). Accordingly, Petitioner is not entitled to habeas relief on this claim.

### 5. Rape

Petitioner was convicted of one count of rape—Count 7—based on Petitioner's penetration of "[O.S.'s] genitals with his penis on the day that her parents found out about the abuse." (Doc. No. 8-1 at 39). As relevant here, "[r]ape is unlawful sexual penetration of a victim by the defendant . . . [when] [f]orce or coercion is used to accomplish the act." Tenn. Code Ann. § 39-13-503(a)(1). "'Coercion' means threat of kidnapping, extortion, force or violence to be performed immediately or in the future or the use of parental, custodial, or official authority over a child less than fifteen (15) years of age." Tenn. Code Ann. § 39-13-501(1). Under Tennessee law, "a finding of parental or custodial authority is not contingent upon the defendant's being the biological parent or legal custodian of the victim." *State v. Maclin*, No. W2013-00967-CCA-R3-CD, 2014 WL 2567088, at *4 (Tenn. Crim. App. June 6, 2014).

Petitioner contends that he was convicted of rape despite insufficient evidence of force or coercion. The Tennessee Court of Criminal Appeals reviewed the evidence and found it sufficient on the element of force or coercion based on Petitioner's custodial authority. (Doc. No. 8-13 at 13) ("The jury clearly believed that [Petitioner] utilized his position as the victim's uncle to inflict the abuse."). This conclusion was based on reasonable determinations of fact and a reasonable application of *Jackson*.

O.S. testified that Petitioner had been part of her life for as long as she could remember and that she had lived with him for a long time. (Doc. No. 8-4 at 22); (*see id.* at 79) (O.S.'s father testifying that Petitioner had lived with them for at least five years and that "[O.S.] would have been just a little girl when he moved in"). Although Petitioner was never relied on to babysit, O.S.'s parents trusted Petitioner to be alone in the home with their children. (*Id.* at 84−85, 110−11). Indeed, O.S.'s mother (A.T.) described Petitioner as "a trusted uncle." (*Id.* at 111). O.S. testified that Petitioner dissuaded her from reporting his actions by telling her that they would not believe her, and that she thought her parents would believe Petitioner instead. (*Id.* at 53−54). When Petitioner initiated sex on the day relevant to this rape conviction, O.S. "didn't think it would help" to tell Petitioner to stop, "because before [she had] told him no[,] and he just kept on doing it." (*Id.* at 56). Indeed, when Petitioner had initiated sex in the past, O.S. told him "to stop doing that to [her] because it was having an [effect] on [her]," but Petitioner did not stop. (*Id.* at 43).

The Tennessee Court of Criminal Appeals, viewing this evidence and the full trial record in the light most favorable to the prosecution, held that the jury reasonably could have inferred that Petitioner, who, "in a custodial capacity, lived with the family," "utilized his position as O.S.'s uncle" to inflict abuse. (Doc. No. 8-13 at 13−14); *cf. State v. Gutierrez*, 5 S.W. 3d 641, 645 (Tenn. 1999) ("Where the adult perpetrator and minor victim are members of the same household, the

adult occupies a position of 'presumptive private trust' with respect to the minor."). It is not for this Court to decide (based on the undersigned's personal view) whether the Tennessee Court of Criminal Appeals—or the jury for that matter—decided the matter correctly. The only question for this Court is whether the Tennessee Court of Criminal Appeals evaluated the jury's decision reasonably under *Jackson*. With two layers of judicial deference in mind, the Court concludes that the Tennessee Court of Criminal Appeals did not unreasonably apply *Jackson*, so Petitioner is not entitled to habeas relief on this claim.

### B. Ground 2: *Miranda*

Supreme Court precedent clearly establishes that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "The *Miranda* exclusionary rule . . . serves the Fifth Amendment and sweeps more broadly than the Fifth Amendment itself. . . . Failure to administer *Miranda* warnings creates a presumption of compulsion. Consequently, unwarned statements that are otherwise voluntary within the meaning of the Fifth Amendment must nevertheless be excluded from evidence under *Miranda*." *Oregon v. Elstad*, 470 U.S. 298, 307 (1985). If law enforcement officials begin an interrogation without *Miranda* warnings and then continue it after standard *Miranda* warnings, the warnings do not "effectively advise the suspect that he had a real choice about giving an admissible statement." *Missouri v. Seibert*, 542 U.S. 600, 612 (2004).

Petitioner here contends that he initially confessed during an unwarned custodial interrogation by Detective Weaver immediately before receiving *Miranda* warnings and again confessing during the formal interrogation. (Doc. No. 2 at 49). He testified similarly during the

pretrial hearing on his motion to suppress. (Doc. No. 8-2 at 28−34). But Detective Weaver testified at the same hearing that in her conversation with Petitioner before his formal interrogation, she told Petitioner that "he had a warrant for rape of a child." (*Id.* at 20−21). The only questions she asked were about Petitioner's treatment while in custody overnight. (*Id.* at 11−12). Petitioner made no incriminating statements during this conversation on the walk from the booking room and interview room. (*Id.* at 21).

The trial court credited Detective Weaver's testimony and discredited Petitioner's. (Doc. No. 8-1 at 25−26) ("From an objective examination of the testimony relating to the events surrounding the interview in this case, the Court is of the opinion that the issue of credibility should be resolved in favor of Detective Weaver. As a result, the Defendant's statement was evidently taken pursuant to a legally perfected *Miranda* waiver and is thus admissible."). And the Tennessee Court of Criminal Appeals upheld the trial court's factual determination. (Doc. No. 8-13 at 8). "In a federal habeas proceeding, state-court credibility determinations are accorded considerable deference given 'the respect due state courts in our federal system,' and we presume them 'correct absent clear and convincing evidence to the contrary.'" *Wesson v. Shoop*, 17 F.4th 700, 705 (6th Cir. 2021) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 339−40 (2003).

Clear and convincing evidence is required for this Court to second-guess the trial court's credibility determination, 28 U.S.C. § 2254(e)(1), but Plaintiff does not provide it. Petitioner suggests that the trial court made up its mind before hearing Petitioner's testimony and "presented

hostility" to Petitioner and trial counsel before Petitioner's testimony at the suppression hearing.[5] (Doc. No. 2 at 47). He presented this same argument on direct appeal, (Doc. No. 8-11 at 23), but the Tennessee Court of Criminal Appeals concluded that "[t]he record supports the findings of the trial court." (Doc. No. 8-13 at 8). Because that conclusion was based on a reasonable determination of fact, Petitioner is not entitled to habeas relief on this claim. 28 U.S.C. § 2254(d)(2).

### C. Grounds 3, 4, 5, 6, and 7: Ineffective Assistance

The Sixth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, guarantees to a person accused of a crime the right to effective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) deficient performance of counsel and (2) prejudice to the defendant. *See Bell v. Cone*, 535 U.S. 685, 694−95 (2002). Trial counsel's performance is deficient when it falls below an objective standard of reasonableness. *See Strickland v. Washington*, 466 U.S. 668, 686−87 (1984). The prejudice element requires a petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Petitioner contends that trial counsel was ineffective in several respects. The Court addresses them each in turn.

---

[5] The trial court expressed confusion and skepticism about the legal theory underlying the motion to suppress. (Doc. No. 8-2 at 27) ("That is what I'm having trouble understanding, what your motion states? . . . I don't know what you are trying to prove, but put him up here."). The court then later tried to warn trial counsel about the risks of Petitioner contradicting his own prior testimony. (*Id*. at 31) ("[H]e has already testified that this lady did not ask him anything. Don't lead him. Your client has already testified to that, and you are putting his neck right in the noose, Mr. Russ, is what you are doing. . . . He has already testified once, now if he's going to change his testimony then the [prosecutor] is going eat him alive at trial."). The Tennessee Court of Criminal Appeals could have reasonably determined that the trial court's comments reflect an attempt to safeguard Petitioner's rights, not hostility toward Petitioner.

1. <u>Failing to file a pretrial motion to sever offenses</u>

Petitioner contends that trial counsel should have moved to sever offenses. (Doc. No. 2 at 58−66). The trial court on postconviction review found that counsel's performance was neither deficient nor prejudicial. (Doc. No. 8-17 at 102) ("Trial counsel's failure to file a motion for severance was not the result of deficient representation, nor did it result in any prejudice to the Petitioner."). The Tennessee Court of Criminal Appeals agreed. (Doc. No. 8-23 at 7) ("The record supports the post-conviction court's determination that the Petitioner did not receive the ineffective assistance of counsel by counsel's failure to file a motion to sever the offenses."). This decision was reasonable.

The Court need not address the adequacy of counsel's performance, because Petitioner has not shown that the state court's determination on *Strickland*'s prejudice prong was unreasonable. *Jones v. Bagley*, 696 F.3d 475, 490 n.8 (6th Cir. 2012) ("Because a petitioner must show both *Strickland* prongs in order to gain relief, if the prejudice prong demonstrates that the petitioner is not entitled to relief we need not analyze the competence prong."). Petitioner's only attempt to identify prejudice goes as follows: "Had the cases been severed, the jury would not have heard evidence in the other cases and Petitioner would not likely have been convicted on all seven offenses as charged." (Doc. No. 15 at 44).

But the Tennessee Court of Criminal Appeals held that even if the offenses had been severed, the evidence of Petitioner's numerous crimes would have been admissible at each trial because "[t]he offenses were part of a larger plan . . ., and evidence of each offense would be admissible at the trial of the other offenses without being overly prejudicial." (Doc. No. 8-23 at 7). And it is not this Court's role to second-guess a Tennessee court's application of Tennessee law. *Thomas v. Stephenson*, 898 F.3d 693, 701 (6th Cir. 2018) ("[I]t is 'not the province of a federal

habeas court to reexamine state-court determinations on state-law questions.'" (quoting *Estelle v. McGuire*, 502 U.S. 62, 67−68 (1991)). Given this evidentiary ruling, Petitioner has not shown that the Tennessee Court of Criminal Appeals made an unreasonable determination as to (the lack of) prejudice under *Strickland*. He is therefore not entitled to relief on this claim.

## 2. Failing to file for a bill of particulars

Petitioner contends that trial counsel should have moved for a bill of particulars before trial. (Doc. No. 2 at 66−73). He argues that had such a motion been granted, counsel would have been more prepared to argue Petitioner's motion for acquittal on the charge of rape of a child based on an act of cunnilingus. (*Id.*); (*see also* Doc. No. 15 at 48−52). The Tennessee Court of Criminal Appeals considered and rejected this ineffective-assistance-of-counsel claim:

> Tennessee Rule of Criminal Procedure 7(c) provides that on "a defendant's motion, the court may direct the district attorney general to file a bill of particulars so as to adequately identify the offense charged." The purpose of a bill of particulars is to provide the "defendant with information about the details of the charge against him if this is necessary to the preparation of his defense[,]" to assure "that a defendant has an opportunity to avoid prejudicial surprise at trial[,]" and "to preserve a plea against double jeopardy. *State v. Sherman*, 266 S.W.3d 395, 408-09 (Tenn. 2008) (internal citations omitted). "Information that may be required in the bill of particulars includes, but is not limited to, details as to the nature, time, date, or location of the offense." *State v. Speck*, 944 S.W.2d 598, 600 (Tenn. 1997) (citing *State v. Byrd*, 820 S.W.2d 739, 741-42) (Tenn. 1991)).
>
> In this case, trial counsel testified that although the indictment was vague, the prosecutor provided him with the necessary details regarding the charged offenses. Counsel said that the prosecutor gave him all of the information that would have been included in a bill of particulars. Moreover, counsel explained that the defense strategy was that the Petitioner never committed the offenses. The trial court credited counsel's testimony that counsel received the necessary information to prepare adequately for trial. The record supports the post-conviction court's determination that the Petitioner did not receive the ineffective assistance of counsel by counsel's failure to request a bill of particulars. The Petitioner is not entitled to relief on this basis.

(Doc. No. 8-23 at 8).

This conclusion was based on a reasonable application of *Strickland* and reasonable determination of fact. Trial counsel's testimony supports the state courts' factual findings and credibility determinations. (*See* Doc. No. 8-18 at 9) (trial counsel testifying that, except for "the exact minute when this allegedly occurred exactly," there was no additional information that a bill of particulars could have provided). It is Petitioner's burden to rebut those findings by clear and convincing evidence. *Wesson*, 17 F.4th at 705. Instead, he offers only his own interpretation of trial counsel's postconviction testimony. (Doc. No. 15 at 44−50). Accordingly, Petitioner has not met his burden to overcome 28 U.S.C. § 2254(d) on this claim.

Additionally, Petitioner has failed to demonstrate prejudice. The only potential prejudice he specifically identifies is a rehash of his argument that the state did not prove rape of a child via anal rape or cunnilingus because the state did not present sufficient evidence of penetration. (Doc. Nos. 2 at 71−73; 15 at 50−52). But he does not show how any additional information trial counsel might have received regarding these counts would have created a reasonable probability of a different outcome at trial.[6] So, for this reason too, Petitioner's claim does not warrant habeas relief.

3.  Failing to seek a jury instruction for attempted rape of a child

Petitioner contends that trial counsel should have sought jury instructions for the lesser-included offense of attempted rape of a child as to Counts 2 (rape of a child by anal penetration)

---

[6] The Tennessee Court of Criminal Appeals made no finding as to whether any motion for a bill of particulars would have been granted. No bill of particulars is required where the prosecution has provided defense counsel with the necessary information "in some other satisfactory form." *State v. Hicks*, 666 S.W.2d 54, 56 (Tenn. 1984) (quotation marks omitted). Here, trial counsel testified at the postconviction evidentiary hearing that the prosecution had provided counsel with the required information. (Doc. No. 8-23 at 8). In light of this testimony, it is far from certain that a motion for bill of particulars would have been granted.

and Count 3 (rape of a child by cunnilingus). (Doc. No. 2 at 75−81). The Tennessee Court of Criminal Appeals held that Petitioner was not prejudiced by trial counsel's performance in this regard. (Doc. No. 8-23 at 9).

As to Count 2, O.S. testified that Petitioner inserted his penis into her "behind" "a little bit" but could not fully insert it. (Doc. No. 8-4 at 44−45). And Petitioner himself confessed to law enforcement that he had anal sex with O.S. (Doc. No. 8-5 at 35−36). As to Count 3, O.S. testified that Petitioner "kissed [her] vagina" and "spit in [her] vagina" to make penetration with his penis easier. (Doc. No. 8-4 at 45−47). The jury credited this evidence and found Petitioner guilty of rape of a child on Counts 2 and 3. Based on the same evidence, the Tennessee Court of Criminal Appeals found no reasonable probability that a jury would have acquitted Petitioner of rape of a child and instead convicted him of attempted rape of a child if that instruction had been provided. (Doc. No. 8-23 at 9). These findings were reasonable, so 28 U.S.C. § 2254(d) bars relief.

4. Failing to object to introduction of O.S.'s statements made during a medical interview and a forensic interview

Petitioner contends that trial counsel should have made Confrontation Clause objections to testimony by Detective Weaver about statements O.S. made during a forensic interview and testimony by Nurse Practitioner Hollye Gallion about statements made by O.S. to an unidentified social worker during a medical interview. (Doc. Nos. 2 at 82−83; 15 at 60−66). Petitioner did not raise this claim in state court and concedes that it is procedurally defaulted. (Doc. No. 2 at 3). He argues, however, that the default should be excused because postconviction counsel was ineffective for not presenting this claim in Petitioner's initial collateral review proceedings.[7] (*Id.*

---

[7] While Petitioner does not specify that postconviction counsel was ineffective during initial postconviction proceedings, he relies on *Martinez v. Ryan* to excuse the default, and *Martinez* expressly applies only to "[i]nadequate assistance of counsel at initial-review collateral proceedings." 566 U.S. 1, 9 (2012).

at 79−83). In the interest of judicial economy, the Court will bypass the parties' procedural default arguments because Petitioner is not entitled to relief on the merits of his claim. *See Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) ("[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits."). Because Petitioner did not present his claim in state court, it was not adjudicated on the merits, so this Court will review it under pre-AEDPA standards. *Robinson v. Howes*, 663 F.3d 819, 823 (6th Cir. 2011).

When the prosecution seeks to introduce testimonial[8] out-of-court statements from a declarant who is not subject to cross-examination at trial, "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 68 (2004). But "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Id.* at 59 n.9; *see California v. Green*, 399 U.S. 149, 161 (1970) ("[N]one of our decisions interpreting the Confrontation Clause requires excluding the out-of-court statements of a witness who is available and testifying at trial.")[9]

Any Confrontation Clause objection to Detective Weaver's testimony about O.S.'s statements during the forensic interview would have been meritless. The forensic interview was audio and video recorded, and Detective Weaver viewed the interview shortly after it was conducted. (Doc. No. 8-5 at 18−19). Detective Weaver then testified at trial, relaying some of the

---

[8] "Testimonial" in this context is a legal term of art, the contours of which the Court need not explain here, because the Court is assuming *arguendo* that O.S.'s out-of-court statements about which Petitioner complains are "testimonial.

[9] This is an important limitation on the scope of protection under the Confrontation Clause, and the same limitation is generally non-existent under evidentiary rules against hearsay (such as the Federal Rules of Evidence, which generally (albeit subject to many exceptions) bar hearsay irrespective of whether the declarant testifies or is otherwise available at trial.

statements made by O.S. during this interview—particularly the language O.S. used to describe sexual acts. (*Id.* at 19−20) (reporting that O.S. said things like "Put his body on my body, put his private in my private," and described ejaculation as "white gushy stuff came out of his private"). The Court assumes without deciding that O.S.'s out-of-court statements were testimonial. But O.S. was at trial and available for cross-examination, so the Confrontation Clause "places no constraints at all" on the use of O.S.'s prior statements.[10] *Crawford*, 541 U.S. at 59 n.9; *see Townsend v. Trierweiler*, No. 18-2273, 2019 WL 1958791, at *2 (6th Cir. April. 25, 2019) (denying certificate of appealability for Confrontation Clause claim because, "where, as here, the declarants testify at trial and are subject to unrestricted cross-examination, admission of their prior out-of-court statements does not violate the Confrontation Clause"). Accordingly, trial counsel was not deficient for failing to object to Detective Weaver's testimony on Confrontation Clause grounds.[11]

Moreover, as to both Detective Weaver and Nurse Practitioner Gallion's testimony, Petitioner has not demonstrated prejudice based on counsel's failure to object.[12] Nurse Practitioner Gallion testified about O.S.'s out-of-court statements as follows:

---

[10] To be sure, trial counsel did not seek to cross-examine O.S. regarding her statements made during the forensic interview. But Petitioner does not allege that this decision constituted ineffective assistance.

[11] Even if an out-of-court statement is not prohibited by the Confrontation Clause, it conceivably could be prohibited by applicable evidentiary rules dealing with hearsay. It is possible that O.S.'s out-of-court statements would have been admissible under the Tennessee Rules of Evidence; for example, they might have been admissible, at any point after she was cross examined, under Tennessee Rule of Evidence 801(d)(1)(B) as a prior statement consistent with her trial testimony. But the Court need not delve into this possibility, because Petitioner does not argue that trial counsel should have objected based on Tennessee evidentiary law.

[12] Nurse Practitioner Gallion's testimony included multiple layers of out-of-court statements, including an unnamed social worker's written summary of O.S.'s statements during the medical interview. (Doc. No. 8-4 at 141−142). There is no indication that the unnamed social worker was previously cross-examined or was available to be cross-examined at trial, so the Confrontation Clause would bar any evidence about the social worker's testimonial out-of-court statements. *Crawford*, 541 U.S. at 68.

[W]hen asked to tell me what happened with Marlon, [O.S.] reported, "He would do it every single time when mom went to work or I wouldn't go to school. It happened when I was in the middle of the sixth grade after we went to Guatemala." When asked what happened, [O.S.] reported, "He would put his body on me, and he would put his slushy stuff on the paper and throw it away and then come back and do to me again."

When asked if there was any other type of contact that occurred, [O.S.] reported, "He would touch me here," as she indicated by pointing to her breast and front genitalia. She then reported, "He also put his body part back here," as she indicated by pointing to her anal area. When asked if she had any pain or bleeding associated with any of the incidents, [O.S.] reported, "No."

(Doc. No. 8-4 at 146).

Even without Detective Weaver and Nurse Practitioner Gallion's testimony, ample evidence[13] of Petitioner's guilt was presented at trial, including the following:

- O.S.'s testimony about multiple instances of abuse and rape by Petitioner, including vaginal penetration, anal penetration, cunnilingus, and touching her breasts. (Doc. No. 8-4 at 23−58).

- O.S. parents' testimony about catching Petitioner outside O.S.'s bedroom, wearing only underwear, with his clothes in a pile next to O.S.'s bed. (*Id.* at 85−87, 113−115).

- O.S.'s mother's testimony that O.S. told her that Petitioner had been inappropriately touching her since O.S.'s mother traveled to Houston. (*Id.* at 115−116).

- Detective Weaver's testimony that Petitioner had confessed to having penile-vaginal intercourse with O.S. three or four times and that Petitioner had confessed to having anal sex with O.S. (Doc. No. 8-5 at 35−36).

In light of this evidence, and the full evidence presented at trial, there is no reasonable probability that the jury would have acquitted Petitioner on any charges based on the exclusion of O.S.'s out-of-court statements.

---

[13] Indeed, the evidence of Petitioner's wrongdoing was overwhelming. However, the evidence was merely sufficient, not overwhelming, as to certain elements of some offenses, most notably O.S.'s age at the time of the events underlying Counts 1 and 2. However, Nurse Practitioner Gallion's testimony about O.S.'s out-of-court statements provided no support for these elements.

Because trial counsel did not perform deficiently in failing to object to Detective Weaver's testimony, and because counsel's decision not to object to Detective Weaver and Nurse Practitioner Gallion's testimony did not create a reasonable probability of a different outcome, Petitioner is not entitled to habeas relief on this claim.

     5.  <u>Failing to move to suppress statements made by Petitioner during the recorded phone call between Petitioner and O.S.'s mother</u>

Finally, Petitioner contends that trial counsel was ineffective for failing to move to suppress evidence of statements Petitioner made during the recorded phone call with O.S.'s mother. (Doc. No. 2 at 82−92). He argues that the recording violated state law and federal law, because O.S.'s mother acted as an agent of the state when she called Petitioner and consented to recording of the conversation. (*Id*. at 85) (citing Tenn. Code Ann. §§ 40-6-302(b), 40-6-303(14); and 18 U.S.C. § 2510(2), 18 U.S.C. § 2511(1)(a).).[14]

Under Tennessee statute, "[it] is lawful under . . . [title 40, chapter 6, part 3] for a person acting under the color of law to intercept a wire, oral or electronic communication, where the person is a party to the communication or one of the parties to the communication has given prior consent to such interception." Tenn. Code Ann. § 39-13-601(b)(4). The Tennessee Supreme Court has expressly recognized that this provision applies to the circumstances here—a recorded conversation between a child sex abuse victim's parent, acting at the direction of law enforcement, and the perpetrator of that abuse. *State v. Sanders*, 452 S.W. 3d 300, 317 (Tenn. 2014) ("The type of recording done in this case is also explicitly sanctioned as lawful in Tenn. Code Ann.

---

[14] It should be noted that these statutes concern wiretapping. Petitioner cites state and federal provisions defining "oral communication" for purposes of the wiretapping statutes. Tenn. Code Ann. § 40-6-303(14); 18 U.S.C. § 2510(2). He also cites a state provision discussing legislative purpose, Tenn. Code Ann. § 40-6-302(b), and a federal provision criminalizing interception of oral communication, 18 U.S.C. § 2511(1)(a).

§ 39-13-601(b)(4)[]"). In the same case, the Tennessee Supreme Court explained that it does not matter for Fourth Amendment purposes whether the party who consents to a recorded conversation is an agent of the state. *Id.* at 315 ("In circumstances like the one at issue here, courts need not expend their energies to determine the point at which a suspect's confidant becomes a government agent. . . . [T]he constitution gives no protection to the wrongdoer whose trusted accomplice is or becomes a police agent, even when that same agent has recorded or transmitted the conversations which are later offered in evidence." (quotation marks and citation omitted)). Accordingly, any motion to suppress based on Tennessee law would have been meritless, and trial counsel cannot have been ineffective for failing to file such a motion.[15] *Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020) ("The failure to raise a meritless claim does not constitute ineffective assistance of counsel.").

Similarly, under federal law, it is permissible "for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(c). And consent is not invalidated merely because the person consenting is acting at the direction of law enforcement. *United States v. Franks*, 511 F.2d 25, 30−31 (6th Cir. 1975) (collecting cases and holding that cooperating informant who was being directed by law enforcement nevertheless consented to recording); *see United States v. Moncivias*, 401 F.3d 751, 754 (6th Cir. 2005) (law enforcement recording of three-way telephone conversation

---

[15] True, the Tennessee Supreme Court's decision in *Sanders* was issued a few years after Petitioner's conviction. But counsel could not have been ineffective for reading the plain language of § 39-13-601(b)(4) as permitting law enforcement recording of Petitioner's conversation with O.S.'s mother—just as the Tennessee Supreme Court read it a few years later. And Petitioner has not shown a reasonable probability that the trial court would have reached a contrary conclusion, so he has failed to demonstrate prejudice.

permissible under 18 U.S.C. § 2511(2)(c) and the Fourth Amendment where one participant—a government informant—consented to recording). Because the admission of Petitioner's recorded statements to O.S. was permissible under both Tennessee and federal law, trial counsel was not ineffective for moving to suppress this evidence.

In summary, Petitioner has failed to demonstrate that he is entitled to habeas corpus relief on any of his claims that trial counsel was ineffective.

## IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal of the denial of a habeas corpus petition may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing § 2254 Cases requires that a district court issue or deny a COA when it enters a final order. A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The district court must either issue a COA indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b).

Here, jurists of reason might disagree about whether Petitioner is entitled to habeas corpus relief on (1) his claim that he was convicted on Counts 1 and 2 based on insufficient evidence regarding the victim's age at the time of the offenses and (2) his claim that trial counsel was ineffective for failing to request jury instructions on the lesser-included offense of attempted rape of a child as to Counts 2 and 3. A certificate of appealability will therefore be granted as to these

claims. As to all other claims, a certificate of appealability will not be granted in this Court, but Petitioner may seek one in the Sixth Circuit.

## V. Conclusion

As discussed above, the Court **DENIES** Petitioner's 28 U.S.C. § 2254 petition for writ of habeas corpus and **DISMISSES** this action with prejudice. A certificate of appealability is **GRANTED** only as to (1) Petitioner's claim that he was convicted on Counts 1 and 2 based on insufficient evidence regarding the victim's age at the time of the offenses and (2) Petitioner's claim that trial counsel was ineffective for failing to request jury instructions on the lesser-included offense of attempted rape of a child as to Counts 2 and 3.

This is the final order in this case, and because it denies all relief, the Clerk **SHALL** enter judgment. *See* Fed. R. Civ. P. 58(b)(1)(C).

IT IS SO ORDERED.

*Eli Richardson*

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE